UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 23-69-DLB-CJS**

**JUDITH GREGORY, et al.**                                                  **PLAINTIFFS**

**v.**                  **MEMORANDUM OPINION AND ORDER**

**EZRICARE, LLC, et al.**                                            **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant EzriCare, LLC ("EzriCare")'s Motion to Dismiss the Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure Rule 12(b)(6). (Doc. # 40). Plaintiffs have filed a Response in Opposition (Doc. # 42), and EzriCare has filed a Reply (Doc. # 48). The Motion is now ripe for this Court's review. For the reasons stated herein, EzriCare's Motion to Dismiss (Doc. # 40) is **granted in part and denied in part**.

**I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

This action arises from injuries suffered by Plaintiffs after Plaintiff Judith Gregory used eye drops contaminated by the bacteria *pseudomonas aeruginosa*. (Doc. # 33). The Court recounts the full factual and procedural history in a contemporaneously entered Order addressing Defendant EzriRx, LLC ("EzriRx)'s Motion to Dismiss for lack of personal jurisdiction. Thus, the Court will avoid a complete recitation of the facts and address only those necessary to address the instant Motion.

1

On May 20, 2023, Plaintiffs Judith Gregory and her husband, Donald Gregory, filed a Complaint alleging claims against Defendants EzriCare, EzriRx, Global Pharma Healthcare Private LTD ("Global Pharma"), and Aru Pharma Inc. ("Aru Pharma").[1] (Doc. # 1). Following motions to dismiss filed by EzriCare and EzriRx, Plaintiffs filed a Motion for Leave to File an Amended Complaint. (Doc. # 26). Magistrate Judge Candace J. Smith granted the Motion and denied the pending motions as moot. (Doc. # 32).

In the Amended Complaint (Doc. # 33), Plaintiffs allege that Plaintiff Judith Gregory was a regular user of Artificial Tears Lubricant Eye Drops ("the Product") labeled, advertised, marketed, distributed, and sold by EzriCare, formulated, designed, and imported by Aru Pharma, Inc., and sold to Judith through Walmart and Amazon.com. (*Id.* at ¶¶ 15-17, 24-25, 38-40). Plaintiffs allege that Defendants were made aware of the outbreak of the *pseudomonas aeruginosa* bacteria in their product in 2022, but continued to manufacture, prepare, assemble, test, market, advertise, package, distribute, and/or sell the product in Kentucky to residents and businesses. (*Id.* at ¶¶ 46-48). Plaintiffs allege that Judith obtained the product by purchasing it in Kentucky both online through Amazon.com and in-person at Walmart. (*Id.* at ¶ 59).

Plaintiffs allege that after use of the product, Judith suffered from "left eye pain, decreased vision, and photophobia." (*Id.* at ¶ 56). She was diagnosed with "necrotizing, scleritis, scleromalacia, pseudophakia, anterior blepharitis, and posterior vitreous detachment." (*Id.* at ¶ 57). Following the diagnoses, she was admitted to the medical

---

[1] As of the date of this Order, Global Pharma has not responded to the Complaint or Amended Complaint nor entered an appearance in this action. Global Pharma is a corporation organized and existing under the laws of India. Additionally, on September 7, 2023, Magistrate Judge Candace J. Smith stayed the proceedings against Aru Pharma in light of their Chapter 11 bankruptcy filing in the Southern District of New York. (Doc. # 23).

2

intensive care unit ("ICU") and diagnosed with sepsis as a result from the infection. (*Id.* at ¶ 63). Plaintiffs allege that she continued to seek outpatient treatment for her eye and her condition worsened. Plaintiffs allege Judith required "multiple surgical interventions, hospitalizations, weekly ophthalmologist visits, and prolonged antibiotics." (*Id.* at ¶ 67).

Plaintiffs bring nine claims against each Defendant jointly: (1) strict liability under Kentucky law for a defective product; (2) strict liability under Kentucky law for a failure to warn; (3) negligence in the manufacture, design, formulation, preparation, assembly, testing, marketing, advertising, packaging, labeling, distribution and sale of the product; (4) negligence for Defendants' failure to warn; (5) breach of express warranty; (6) breach of implied warranty; (7) negligent misrepresentation (8) violations of the Kentucky Consumer Protection Act; and (9) a loss of consortium for Plaintiff Donald Gregory as a result of the "loss of Judith's services, assistance, aid, and companionship as is between husband and wife." (*Id.* at 21-28).

Defendant EzriCare now brings a Motion to Dismiss for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 40). Plaintiffs have filed a Response (Doc. # 42) and EzriCare has filed a Reply (Doc. # 48). The matter being ripe for consideration, the Court will consider the arguments herein.

II.   **ANALYSIS**

   A.   **Standard of Review**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is called to assess whether the plaintiff has "state[d] a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added).  In making that assessment, a court must accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, "if the plaintiffs do 'not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (*en banc*) (quoting *Twombly*, 550 U.S. at 570).

To give rise to plausibility, the Amended Complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  In short, a claim cannot survive a motion to dismiss if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim. *See id*.  The plaintiff's burden in doing so is low, though, as a court should "construe the complaint in the light most favorable to the plaintiff" in evaluating a motion to dismiss. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).  However, the Court is not required to "accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

Usually, in adjudicating a motion to dismiss, the Court is only permitted to consider the Amended Complaint and attached exhibits, items in the record, and "documents that a defendant attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2011) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).  If documents beyond that scope are considered, the motion to dismiss will be converted to a motion for

summary judgment. *Spencer v. Grand River Nav. Co., Inc.*, 644 F. App'x 559, 561-62 (6th Cir. 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Additionally, federal courts apply the substantive law of the forum state in diversity actions.[2] *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Therefore, Kentucky substantive law will apply to Plaintiffs' claims. That said, federal pleading standards still control. *See Lee v. Vand. Univ.*, No. 22-5607, 2023 WL 4188341, at *3 (6th Cir. June 22, 2023) (citing *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010)); *see also Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F.Supp.3d 764, 771-72 (E.D. Ky. 2017).

**B. Discussion**

EzriCare challenges every claim generally, arguing that Plaintiffs have made an inappropriate "shotgun pleading" that fails to make specific allegations against each Defendant. (Doc. # 40-1 at 5-6). Additionally, EzriCare makes specific challenges to Plaintiffs' claims for strict liability (Counts 1 and 2), negligence (Counts 3 and 4), negligent misrepresentation (Count 7), and loss of consortium (Count 9). (*Id.* at 6-11). The Court will first address whether Plaintiffs have made an inappropriate shotgun pleading before addressing each of the individual challenges.

**1. Shotgun Pleading**

EzriCare first claims that the Amended Complaint "impermissibly lumps all Defendants together," making no specific argument "regarding what any one Defendant

---

[2] This Court is sitting in diversity as Plaintiffs are citizens of Kentucky. (Doc. # 33 at ¶ 1-2). EzriRx is a limited liability company whose membership consists of two citizens of New Jersey, Ezriel Green and his father, Menachem Green. (Doc. # 41-2 at 2). Plaintiffs allege that the amount in controversy is more than $75,000. (Doc. # 33 at ¶ 10).

5

has done as compared to the others." (Doc. # 40-1 at 5-6). Plaintiffs respond that EzriCare's Motion to Dismiss is procedurally defective, and EzriCare should have instead moved for a more definite statement. (Doc. # 42 at 5-6). As an initial matter, EzriCare's Motion to Dismiss (Doc. # 40) is not procedurally improper. Courts may permit Plaintiffs to file another amended complaint to resolve issues of an alleged shotgun pleading, but the procedural vehicle to allow that relief may vary. *See Bonner v. Equifax Info. Servs. LLC*, No. 5:20-cv-175-TBR, 2021 WL 4392955, at *2 (W.D. Ky. Sept. 24, 2021).

A shotgun pleading can take a few forms, including when a complaint "fails to connect specific facts or events with the various causes of action" or when the plaintiff "fails to separate each of her causes of action or claims for relief in separate counts." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392-93 (6th Cir. 2020). In a shotgun pleading, the complaint makes it "virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief," *Darwish v. Ethicon, Inc.* No. 1:20 CV 1606, 2020 WL 7129582, at *10 (N.D. Ohio Dec. 4, 2020), and "fails to provide notice regarding which specific defendant is liable for which count." *Bonner*, 2021 WL 4392955, at *2.

Defendants cite to *Banks v. Bosch Rexroth Corp.* as an example of this Court rejecting an amended complaint for failure to provide appropriate notice to defendants. (Doc. # 40-1 at 5) (quoting No. 5:12-cv-345-DCR, 2014 WL 868118, at *7 (E.D. Ky. Mar. 5, 2014)). Therein, the Court found that the amended complaint was deficient because it listed each defendant in each count "with no mention of his individual role or action," and instead incorporated all of the factual and legal allegations against each defendant. *Banks*, 2014 WL 868118 at *7. The Court noted that the complaint created "several confusing issues regarding specific claims," such as "asserting that Individual Defendants

6

negligently hired, trained, supervised, and retained themselves" and claimed retaliation against a defendant that did not have the authority to terminate the plaintiff's employment. *Id.* It should be noted that the Court did not require dismissal of the amended complaint despite these issues, instead finding that the plaintiffs could either re-plead or the defendants could move for a more definite statement. *Id.* (citations omitted).

Here, Plaintiffs have not filed a shotgun pleading. The Amended Complaint incorporates specific facts as to each Defendant and connects the allegations to each individual claim for relief such that EzriCare can easily determine which facts support each claim. (*See* Doc. # 33). Though the Plaintiffs claim that all Defendants are liable for each count, elsewhere in the Amended Complaint, Plaintiffs make specific factual allegations against EzriCare and the other defendants which are then fully incorporated in each cause of action. (*Id.* at ¶¶ 13-72). The Amended Complaint is not so deficient that EzriCare is unable to determine its role in the claimed offenses, and the Plaintiffs' allegations are not so contradictory as those in *Banks*. At this point, before discovery has been conducted and revealed more information about each Defendant's role in putting the Product on the market, the Court finds that the Amended Complaint is sufficient to meet the lenient pleading standards of Rule 8(a) and proceed.

### 2. Count One – Strict Liability for a Defective Product

Kentucky courts have adopted the strict liability principles set forth in the Restatement (Second) of Torts:

> In 1966, [the Kentucky] Supreme Court subscribed to the principle of strict liability as stated in section 402A of the Restatement (Second) of Torts. *See Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446-47 (Ky.1965). The strict liability principle of [S]ection 402A describes a product as defective for purposes of the application of strict liability as one "in a

7

defective condition unreasonably dangerous to the user or consumer or to his property." Restatement (Second) of Torts § 402A (1965).

*Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. App. 1999). The purpose of strict liability is to "permit injured parties a method of reaching back to the manufacturer or distributer of commercial products, following some form of failure on the product's part." *Id*. There are several ways a plaintiff may recover in strict liability, including "defective design, defective manufacture, or failure to warn." *Clark v. Hauck Mfg. Co*., 910 S.W.2d 247, 251 (Ky. 1995).

To prevail in a strict products liability action for a defective product, a plaintiff must show "(1) that there is a 'product,' which is (2) in a defective condition reasonably dangerous to the user or consumer on his property, and (3) reaches the user or consumer without substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) results in physical harm to the ultimate user or consumer or his property." *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 68 (Ky. Ct. App. 1989) (quoting Restatement (Second) of Torts § 402A (1965)). Specifically, "a manufacturing defect exists in a product when it leaves the hands of the manufacturer in a defective condition because it was not manufactured in accordance with its specifications." *Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784, 788 (6th Cir. 2005) (citing *Ford Motor Co. v. McCamish*, 559 S.W.2d 507, 509-11 (Ky. App. 1977)).

EzriCare argues that Plaintiffs have failed to state a claim for which relief can be granted because the Amended Complaint "merely recites boilerplate language tracking the legal elements of strict liability, but fails to allege any facts to support the conclusory allegations." (Doc. # 40-1 at 6). EzriCare argues that Plaintiffs do not allege what kind

8

of defect they assert in order to offer notice of theory of liability to EzriCare, nor do Plaintiffs identify how the product was designed incorrectly or other errors in the manufacturing process. (*Id.* at 7). EzriCare notes that to the extent that Plaintiffs rely upon the voluntary recall by Global Pharma and the FDA investigation of Global Pharma's manufacturing facility, EzriCare was not the "manufacturer, labeler, or importer" of the Product. (*Id.* at 7).

Though EzriCare argues it was not the "manufacturer, labeler, or importer" of the Product (*id.* at 7), the Restatement adopted by Kentucky permits liability for sellers of a defective product, not solely the manufacturer. *Smith v. ICF Addcar Systs. LLC*, No. 11-cv-270-ART, 2014 WL 12648456, at *2 (E.D. Ky. May 5, 2014) ("Section 402A provides that the *seller* of a defective product is strictly liable for any physical harm it inflicts.") (emphasis added). Further, Kentucky law permits Plaintiffs to proceed with claims against EzriCare. Kentucky has a "middleman statute" that permits retailers to escape liability in product liability actions if: "(1) the manufacturer [is] identified and subject to the Court's jurisdiction, *and* (2) the product sold by the . . . retailer [was] unaltered from its original manufactured condition." *Salisbury v. Purdue Pharma, L.P.*, 166 F.Supp.2d 546, 551 (E.D. Ky. 2001) (emphasis added). Exceptions to middleman protection exist if: "(1) . . . the . . . retailer breached an express warranty, or (2) . . . the . . . retailer knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous." *Id.*

Here, the manufacturer Global Pharma is an Indian company that has not yet been served notice of this lawsuit, and this Court's ability to exercise jurisdiction over this party is questionable. And other than EzriCare's rejected argument that Plaintiffs have made

9

an improper shotgun pleading, EzriCare did not challenge Plaintiffs' claim of breach of express warranty (Count 5).  Additionally, Plaintiffs allege that EzriCare had reason to be aware of the bacterial contamination prior to Plaintiff Judith's use of the Product.  (Doc. # 33 at ¶ 46).  Further, at no point does EzriCare argue that the middleman statute applies to it.  Thus, at this stage of the proceedings, the Court will examine Plaintiffs' claims for liability against EzriCare.

As such, Plaintiffs have sufficiently alleged that the Product was in a defective condition dangerous to the user when it was contaminated with dangerous *pseudomonas aeruginosa* bacteria (Doc. # 33 at ¶¶ 1, 52-55, 75), reached Plaintiffs without change in condition (*id.* at ¶¶ 68-69, 75), was sold by EzriCare who is engaged in the business of selling such a product through third party retailers like Walmart and Amazon.com (*id.* at ¶¶ 59, 71-72), and use of the Product resulted in harm to Plaintiffs (*id.* at ¶¶ 1, 56-57, 62-67, 78-79).  Additionally, though not required to establish a defect in the manufacturing process, Plaintiffs allege that other, uncontaminated artificial tears were available on the market.  (*Id.* at ¶¶ 77).  At this stage, the Court must "construe the complaint in the light most favorable to the plaintiff."  *Hill*, 878 F.3d at 203.  Based on the Amended Complaint, Plaintiffs have sufficiently pleaded the elements of strict liability for a defective product and will be permitted to proceed on Count 1 of the Amended Complaint.

### 3. Counts Two and Four – Failure to Warn

The standards for strict liability and negligence in failure to warn are quite similar, so the Court will address Counts 2 and 4 together.  In a failure to warn case, strict "liability for a manufacturer follows only if it knew or should have known of the inherent dangerousness of the product and failed to 'accompany . . . it with the quantum of warning

which would be calculated to adequately guard against the inherent danger.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 461 (6th Cir. 2022) (quoting *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010)).  Additionally, the Plaintiffs must establish that the failure to warn proximately caused their injuries.  *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 507 (6th Cir. 1998) (citing *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995)).

Negligent failure to warn arises "out of general negligence principles."  *Prather v. Abbot Labs.*, 960 F. Supp. 2d 700, 712 (W.D. Ky 2013) (quoting *C&S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 347 (E.D. Ky. 1982)).  A manufacturer is negligently liable for failure to warn if "it knew or had reason to know that its product was likely to be dangerous, had no reason to expect the product's users would be aware of that danger, and failed to exercise reasonable care to alert users of that danger."  *Smith v. Univar USA, Inc.*, No. 12-134-ART, 2013 WL 1136624 (E.D. Ky. Mar. 18, 2013) (citing *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149-50 (6th Cir. 1996)).

EzriCare argues that Plaintiffs provide no evidence of how EzriCare could have known about the *pseudomonas aeruginosa* outbreak, what warnings were inadequate, or how the lack of warnings (that were not pled) led to Plaintiffs injuries.  (Doc. # 40-1 at 8). Looking to the Amended Complaint, Plaintiffs allege that EzriCare was on notice of the bacterial outbreak in May 2022.  (Doc. # 33 at ¶ 46).  Plaintiffs cite to a Center for Disease Control and Protection ("CDC") Health Advisory that maintained updates on the bacterial outbreak in artificial tears products.  (*Id.*) (citing *Outbreak of Extensive Drug-resistant Pseudomonas aeruginosa Associated with Artificial Tears*, CDC.gov, https://emergency.cdc.gov/han/2023/han00485.asp (last visited May 20, 2024)).  Though

11

the webpage is dated February 1, 2023, the CDC indicates that contaminated specimens were collected from May 2022 to April 2023. (*Id.*).  Plaintiffs allege that "[d]espite being on notice of this contamination, Defendants "continued to manufacture, prepare, assemble, test, market, advertise, package, distribute, and/or sell the Product, until early February when the CDC and FDA issues alerts and warnings to customers.  (Doc. # 33 at ¶¶ 48-50).

Under the analysis for strict liability failure to warn, it is unclear at this juncture if EzriCare knew or should have known about the bacterial outbreak in its Product.  This necessarily precludes a finding of whether EzriCare failed to accompany the Product with "the quantum of warning which would be calculated to adequately guard against the inherent danger" of infection.  Plaintiffs allege that EzriCare and the other defendants were aware of the outbreak in the time period before Plaintiffs used and suffered injuries from the Product.  (Doc. # 33 at 46-48).  The CDC indicated that it had taken samples containing the bacteria as early as May 2022, so it is at least plausible that EzriCare could have been aware of the potential for contamination.  Taking this allegation as true, as the Court is required to do at this point, *see Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555), it is at least plausible that EzriCare knew and failed to warn consumers about the danger of the contaminated Product.  Further, if EzriCare was aware of the bacterial contamination and failed to notify consumers, that failure could be the proximate cause of the Plaintiffs' injuries, since a reasonable plaintiff is unlikely to use a product that he or she knows to be contaminated with harmful bacteria.

Similarly, under a negligence theory, EzriCare had a duty to warn consumers if it knew about the outbreak of the bacteria.  *Smith*, 2013 WL 1136624 at *3.  Plaintiffs allege

that the ordinary consumer is unable to ascertain or recognize the presence of bacteria in the Product. (Doc. # 33 at ¶ 99). Plaintiffs allege that Defendants, including EzriCare, breached their duty to warn by failing to provide consumers an adequate warning "on how to recognize and appreciate the dangers associated with the contaminated Product under the circumstances." (*Id.* at ¶ 100). These allegations, taken as true, are sufficient to support a claim of negligent failure to warn.

Therefore, Plaintiffs have adequately alleged the required information to state a claim for relief and will be permitted to proceed on Counts 2 and 4 for failure to warn.

### 4. Count Three – Negligence for a Defective Product

To succeed on a negligence claim in Kentucky, Plaintiffs must establish that (1) EzriCare owed a duty of care to Plaintiffs; EzriCare breached its duty; and (3) the breach proximately caused Plaintiffs' damages. *Bayer*, 13 F. Supp. 3d at 741 (quoting *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992)). "[N]egligence depends on what a prudent manufacturer, engaged in a business similar to that of the defendant, by the exercise of ordinary care actually should have discovered and foreseen." *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976).

EzriCare argues that Plaintiffs do not provide facts that support a negligence action, instead relying on "bare allegations and legal conclusions." (Doc. # 40-1 at 7). EzriCare argues that Plaintiffs do not plead how the product was defectively manufactured, or how the device was defective due to manufacturing. (*Id.*).

In Response, Plaintiffs argue that EzriCare's trademark and licensing rights "plausibly infer involvement or control over the manufacturing and distribution process," and because EzriCare "conjunctively or disjunctively marketed, advertised, labeled,

13

distributed, and/or sold the Product under its direction," EzriCare "owed a duty to exercise reasonable care to perform those functions under statutory and tort law to individuals like Judith since it was foreseeable she and other similarly situated individuals would use the Product." (Doc. # 42 at 6-7). Plaintiffs argue that the Amended Complaint sufficiently alleges the duty of care, breach of that duty, and causation of her damages. (*Id.*).

Looking to the Amended Complaint, Plaintiffs alleged that Defendants including EzriCare "owed a duty to [Plaintiffs] to use reasonable care in manufacturing, designing, formulating, packaging, labeling, distribution, and/or sale of the Product, and a duty to ensure it was safe to be sold and used in the manner intended." (Doc. # 33 at ¶ 92). Plaintiffs allege that Defendants breached this duty by manufacturing, assembling, shipping, inspecting, testing, and/or selling the Product in a negligent or reckless manner such that it was likely the Product would cause injury due to contamination of *pseudomonas aeruginosa*." (*Id.* at ¶ 93). Finally, Plaintiffs allege that Defendants' "negligent or reckless conduct is the direct and proximate cause" of Plaintiffs' injuries detailed in the Factual Allegations section of the Amended Complaint that was incorporated into each cause of action. (*Id.* at ¶¶ 56-70, 94). Further, in the Factual Allegations, Plaintiffs explain that Judith's ophthalmologist noted Judith was using the Product and reported her case to the CDC, no other factors or conditions could have caused her eye condition beyond the contamination of the Product, and she would not have purchased, used, or suffered harm from the Product "had Defendants developed and followed appropriate standards." (*Id.* at ¶¶ 68-70).

EzriCare cites to *Bosch* as an instructive case. Therein, the Western District of Kentucky dismissed the plaintiffs' claim for negligent design and manufacture of Mirena,

14

an intrauterine birth control device ("IUD"). 13 F. Supp. 3d at 742. The court determined that plaintiffs did not support their claims with factual allegations, simply stating that the defendants were negligent in its manufacture and design and failed to use due care to avoid risks to users. *Id.* The court stated that it was not enough for plaintiffs to rely on their basic injury allegations and simply argue that the product was defective because it was dangerous. *Id.*

EzriCare argues Plaintiffs' claims are similar to those in *Bosch*. The Court disagrees. Unlike the plaintiffs in *Bosch*, who did not offer any allegations about how the IUD was negligently designed or manufactured, Plaintiffs' Amended Complaint alleges that the Product was defectively manufactured when it was contaminated with *pseudomonas aeruginosa*. (Doc. # 33 at ¶ 93). Plaintiffs further allege that EzriCare and the other Defendants had a duty to use reasonable care in its manufacturing to make sure the products that it sells are safe for use, and EzriCare breached that duty by selling the Product contaminated with bacteria, which injured Plaintiffs. (*Id.* at ¶ 92-94). Additionally, Plaintiffs include allegations that the Food and Drug Administration ("FDA") inspected Global Pharma's facilities and issued a report indicating deficiencies in the manufacturing conditions including sterilization practices. (*Id.* at ¶¶ 53-54 and Ex. A).

As noted above, the Court must "construe the complaint in the light most favorable to the plaintiff" at this stage. *Hill*, 878 F.3d at 203. Based on the Amended Complaint, Plaintiffs have sufficiently pleaded the elements of negligence for a defective product and will be permitted to proceed on this claim.

### 5. Count Seven – Negligent Misrepresentation

Next, EzriCare challenges Count 7 of the Amended Complaint, where Plaintiffs

allege negligent misrepresentation of the Product's label. (Doc. # 40-1 at 9-11). Specifically, Plaintiffs allege that EzriCare's representations that the Product "contained specific ingredients, was comparable to Refresh Plus Eye Drops, and that they soothe, moisturize, lubricate, and protect the eyes," as well as representations that the Product is of "superior quality assurance" and "FDA Registered, Insured, and Compliant," constituted negligent misrepresentations. (Doc. # 33 at ¶¶ 118-119). Plaintiffs allege that Defendants, including EzriCare, intended for Plaintiffs and other similarly situated individuals to rely on the representations, they were material to Plaintiff Judith's purchasing of the Product, Defendants had a duty to "accurately disclose the contents of the Product," Defendants "should have known the representations were false," and Defendants "breached their duties by making false representations regarding the safety and quality of the Product." (*Id.* at ¶¶ 120-124).

EzriCare challenges that the claim is not viable in the context of a products liability action, and permitting Plaintiffs to proceed would "impermissibly expand this cause of action beyond the intent of Kentucky law." (*Id.* at 9-10). In the alternative, EzriCare argues that Plaintiffs do not meet the heightened pleading requirements required by Federal Rule of Civil Procedure 9 because Plaintiffs do not sufficiently plead the date, time, and place of the alleged misrepresentation, or which Defendant made the representation. (*Id.* at 10-11).

Kentucky courts have adopted the elements set forth in the Restatement (Second) of Torts § 552 to support a cause of action for negligent misrepresentation in contract cases. *Presnell Construct. Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 757 (Ky. 2004). In support of the proposition that negligent misrepresentation claims are precluded

16

in product liability actions, EzriCare cites to *Bland v. Abbott Labs*, No. 3:11-cv-430-H, 2012 WL 524473 (W.D. Ky. 2012) and *Baird v. Bayer Healthcare Pharmaceuticals, Inc.*, No. 6;13-cv-77-DCR, 2013 WL 5890253 (E.D. Ky. 2013).  Therein, the courts analyzed cases where the Kentucky Supreme Court had applied Section 552 and subsequently determined that "the language . . . is poorly suited to a [commercial] product sale." *Giddings & Lewis v. Indust.* Risk, 348 S.W.3d 729, 745 (Ky. 2011).  Both courts in *Bland* and *Baird* declined to extend the negligent misrepresentation cause of action beyond the limits determined by the Kentucky Supreme Court in *Giddings* and dismissed the claims. *See Bland*, 2012 WL 524473, at *2; *Baird*, 2013 WL 5890253, at *4.

However, subsequent to both of those cases being decided, the Sixth Circuit has pointed to the Kentucky Supreme Court's acknowledgement of the standard from the Restatement (Third) of Torts: Products Liability (§ 9), recognizing the tort of negligent misrepresentation in the product-sale context:

> One engaged in the business of selling or otherwise distributing products who, in connection with the sale of a product, makes a fraudulent, negligent, or innocent misrepresentation of material fact concerning the product is subject to liability for harm to persons or property caused by the misrepresentation.

*Morris Aviation, LLC v. Diamond Aircraft Industs.*, 536 F. App'x 558, 567-68 (6th Cir. 2013) (quoting *Giddings v. Indust. Risk. Insurers*, 348 S.W.3d 729, 746 n.11 (2011)). Thus, the reasoning of *Bland* and *Baird* no longer compels dismissal of Plaintiffs' claims for negligent misrepresentation.  *See Smith v. Bayer Healthcare Pharmaceuticals, Inc.*, No. 3:14-cv-6-CRS, 2015 WL 7458637, at *3-4 (W.D. Ky. Nov. 23, 2015) (collecting cases).  Accordingly, because Kentucky law permits negligent misrepresentation claims associated with the sale of a product, Plaintiffs' claim will not be dismissed on this basis.

17

That being said, claims of negligent misrepresentation based on Kentucky law are also subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Republic Bank & Trust Co. v. Bear Stearns Co.*, 683 F.3d 239, 247-48 (6th Cir. 2012). The Amended Complaint must "specify the statements in question, identify the speaker, and state where and when the statements were made." *Morris Aviation, LLC v. Diamond Aircraft Indus. Inc.*, 730 F. Supp. 683, 697 (W.D. Ky. 2010).

EzriCare argues that Plaintiffs have made "bare-bones, conclusory allegations" that do not allege the time, date, or place of such a false representation, do not allege specific statements or representations that Plaintiffs believe are false, and provide no facts suggesting that Plaintiffs relied on the language. (Doc. # 40-1 at 11). However, as with most of the claims in this Motion to Dismiss, EzriCare fails to consider the factual allegations that Plaintiffs incorporated by reference in each cause of action.

Plaintiffs allege specifically that EzriCare has and "continue[s] to represent that the Product is of "superior quality assurance" and "FDA Registered, Insured, and Compliant" despite the Product's contamination. (Doc. # 33 at ¶ 35). Plaintiffs also allege that EzriCare represents that the Product contains specific ingredients that do not include the *pseudomonas aeruginosa* bacteria (*id.* at ¶ 43), and compares the Product to "Refresh Plus Eye Drops," a competitor brand. (*Id.* at ¶ 119). Plaintiffs allege that she and other similarly situated consumers relied on these representations in making their purchase of the Product, and they were material to her decision to purchase. (*Id.* at ¶¶ 120-121). Plaintiffs include images of and online links to the Product with the representations from EzriCare's website, Amazon's webstore, and the packaging itself, and states that she purchased the Product in person at Wal-Mart and online through Amazon.com in May

18

2022. (Doc. # 33 at ¶ 24, 34, 59). Thus, Plaintiffs have pled with specificity what statements they believe to be false misrepresentations of the Product, who made them, and where and when they were made. *See* Fed. R. Civ. P. 9(b); *Morris Aviation, LLC*, 730 F. Supp. at 697. Because Plaintiffs' claim of negligent misrepresentation is not precluded by Kentucky law, and Plaintiffs have met the heightened pleading requirements of Rule 9(b), Plaintiffs will be permitted to proceed on Count 7.

### 6. Count Nine – Loss of Consortium

Finally, EzriCare challenges Claim 9 of the Amended Complaint, where Plaintiffs allege that Plaintiff Donald Gregory suffered loss of consortium following Plaintiff Judith Gregory's injuries. (Doc. # 40-1 at 11). EzriCare argues that a claim for loss of consortium is a "wholly derivative claim that merely provides access to an additional category of damages if a defendant's liability can be established under another legal theory." (*Id.*) (quoting *Mullins v. Marathon Petroleum Co.,* No. 12-cv-HRW, 2013 WL 2285140, a8 *4 (E.D. Ky. May 22, 2013)). EzriCare argues that because it believes the other claims are unsustainable, Plaintiffs cannot recover loss on this claim as well. (*Id.*). As noted within this Order, however, Plaintiffs are permitted to proceed on each of their claims. Thus, this reasoning for rejecting the claim for loss of consortium does not apply and Plaintiffs will be permitted to proceed with this cause of action as well.

## III. CONCLUSION

For the reasons above, the Court concludes that Plaintiffs have stated claims for which relief can be granted. EzriCare did not specifically challenge Plaintiffs' claims for breach of express warranty, breach of implied warranty, and violation of the Kentucky Consumer Protection Act beyond its rejected argument that Plaintiffs made a shotgun

pleading. Additionally, apart from challenging personal jurisdiction, which the Court has denied in a separate Order, EzriRx did not join in any of the arguments to dismiss Plaintiffs' claims under Rule 12(b)(6). Thus, Plaintiffs will be permitted to proceed to discovery on all of their claims against both Defendants EzriCare and EzriRx.

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant EzriCare's Motion to Dismiss (Doc. # 40) is **DENIED**; and

(2) Defendants EzriCare and EzriRx are directed to file an answer to Plaintiffs' Amended Complaint (Doc. # 33) **within twenty-one (21) days** of the date of this Order.

This 20th day of May, 2024.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2023\23-69 MOO on MTD 12(b)(6).docx